Judge Simpson
delivered the opinion of the Court.
This suit was instituted for the purpose of procuring a perpetual injunction against the plaintiffs in error, to prevent them from interfering with, or disturbing the members of the ‘’Baptist Church of Christ in Owen-ton,” in the exclusive use, possession and enjoyment, of a lot of ground and a house of worship erected thereon, belonging to, and in the possession of said Church.
The persons against whom the suit was brought had been excluded from the Church. As expelled members-they had no right to or interest in the property of the Church, unless they are embraced by the act of 1814, (2 Stat. Law, 347.) The land upon which the house of worship was erected had been conveyed to trustees,, and the title still remained in them. This suit was brought by a committee appointed for that purpose by the Church, against the plaintiffs in error, who had’ gained access to the house, by changing a lock on one-of the doors, they key of which they retained, and occupied the house a portion of the time, against the will., and in defiance of the wishes of the members of the-Church. As the title to the property still remained ilithe original trustees, and the suit is in the name of a committee appointed by the Church, the statute off 1814, has no application, as was decided in cases of Shannon vs Frost, (3 B. Monroe, 253,) and Hadden & al vs Chorn & al, (8 B. Monroe, 70.)
It is contended that the complainant’s bill is defective, in not alleging that the committee who sue, were appointed by a majority of the members of the Church, *288 as required by the act of 1834; (3 Statute law, 499.) The bill does not allege that a majority of all the members of the Church were present at the time the committee was appointed. The allegation on this subject is that the committee was appointed by the Church for the purpose of bringing this suit. This allegation was admitted in the answer, and no question as to its suffi" ciency made in the Court below. It might therefore, be implied to mean -that the requisitions of the statute had been complied With by the Church at the time the appointment was made. But conceding this construction to be doubtful, still as the committee was appointed by the Church to institute and manage the suit on its behalf, the members thereof can maintain the suit in their own names, independent of our statute of 1835; (Hadden, &c. vs. Chorn supra.) This objection must therefore be regarded as unavailing.
An allegation in a bill that upon full and mature deliberation certain pers’ns were expelled the ohurch is a sufficient averment of a regular expulsion.
It is also contended that the bill is. defective in not alleging that the defendants were excluded by a majority of the members, or in accordance with the rules and regulations of the Church. A number of persons were excluded from the Church on two separate occasions. In relation to those who were first excluded, it is averred in the bill, that a charge was presented against them at a regular meeting of the Church, which being sustained to the satisfaction of the Church, they were excluded. The averment in relation to those who were excluded on the second occasion, is, that the Church determined upon full and mature consideration, that ■the-course pursued’by them was irreligious and immoral, and that they ought to be excluded from the fellowship of the Church, which was accordingly done by a direct vote of the Church.. These allegations are, in our opinion, entirely sufficient. The act of exclusion is averred to have been done by the Church. If done by the Church as a body, at its regular time -of meeting, it must be regarded as having been done in accordance with the rules and regulations of the Church, *289 whether those rules required a concurrence of all .or only of a majority of the members, for that purpose.
After the expulsion had taken place, the individuals expelled were organized and constituted into a Church, and assumed the name of “ the first regular Baptist Church of Jesus Christ at Owenton.” At the time of this organization, the new Church appointed a committee to confer with the old Church, in relation to the use of the house a portion of the time; and the latter having also appointed a committee of conference, an agreement was entered into by the two committees, in which it was stipulated that each Church was to occupy the house for the purpose of religious worship, two weeks in every month.
Doubts having subsequently arisen, in relation to the propriety of the organization of the new Church, if voluntarily rescinded the order by which it had been constituted, and thereby in effect declared its own dis.solution.
The members of which it was composed, subsequently presented a petition to the Church from which they had been excluded, proposing a reference of all -their difficulties to a committee of brethren* to be appointed by other Baptist Churches. The proposition wag acceded to, and an agreement made to submit to the committee thus constituted all the facts attendant upon the difficulties of the parties, and t'o abide by its decision. That agreement was carried into effect, and a committee appointed in the manner contemplated by1 it, who having heard the parties, decided in substance that the action of the old Church in excluding the individuals who belonged to the Church afterwards organized was founded upon sufficient cause, and that the constitution of the latter Church out of the expelled members was contrary to the law and usage of the Baptist Church,, and therefore null and of no effect. Thereupon the new Church disbanded, and some of its members have since joined the Christian Church in Owenton, a differ. .ent body of Christians altogether. The,others did noi *290 when this suit was commenced belong to any Church whatever.
A collection of individuals as a church acquiring lights as a church and subsequently dissolving, have no individual rights growing out of the former organ ization.
It is now contended that the agreement between the two Churches is still obligatory, and consequently the old Church is not entitled to the exclusive use and possession of the house, although the statute of 1814, has no application to the case.
The agreement however, was entered into between two Churches then existing, and both belonging to the same order of Baptists. Since that time the new Church has been disbanded and had no existence when the plaintiffs in error entered into the possession of the house, and occupied it without the consent of the Church to whom it belongs. The persons who composed the new Church did not acquire any right to the use of the house by virtue of the agreement, in their individual, but only in their Church capacity. This right cannot exist, after the society upon whom it was conferred, has been dissolved, and has ceased to have an existence. The right was peculiar and belonged alone to the Church as an organized body of professing Christians. ■ It did not attach to the members individually, or continue after the Church was disbanded. It would be inconsistent with both the object and terms of the agreement, to give to it a construction that would confer upon the persons who composed the new Church, at the time it was entered into, a right to the use of the house even after they had become members of a religious society, whose doctrines and religious opinions are radically and essentially variant from those held by the Church to which they then professed to belong.
It is said however, that the committee to whom the reference was made, had no power by the terms of the submission to pass upon the question decided by it as to the legality according to Baptist usage, of the 'organization of the new Church. It seems to us that the whole matter was submitted. The order establishing the new Church had been rescinded. The Church had not been actually dissolved, but it occupied a question *291 able position. Its claims to be regarded as a Church were not recognized, and its right to Church ordinances and Christian fellowship was controverted. Under these circumstances, the proposition was made to submit all the matters of difficulty to the decision of a committee to be constituted in a certain manner. The difficulties referred to involved not only the propriety of the action of the Church in excluding some of its members, but also the attitude of the excluded members in their separate church organization, whose rights in that capacity were denied by the Church from which they had been excluded. An adjustment of all these difficulties was therefore essential to the object in view, and appears to have been contemplated by the parties in the reference made by them. But if in this we are mistaken, still, as the new Church by its own action admitted that it had been improperly organized, and has been actually disbanded, the legal effect is the same that it would have been, if the question involving the legality of its organization had been submitted and decided against it. It has by disbanding lost its Church capacity, and can no longer be identified as a branch of the baptist order to which it belonged, and in which character the right to occupy the house a portion of the time had been conceded. And in the loss of that attitude and capacity, it lost all the rights that had been conferred upon it by the agreement.
The lot of ground upon which the house in contest was erected, was conveyed to William M. Suter and Thomas A. Berryman as trustees, for the use of the Baptist Church in Owenton. Berryman, the trustee, is one of the persons against whom this suit was instituted, and is now a member of the Christian Church in Owenton. The Circuit Court rendered a decree in favor of the complainants, giving to them the exclusive use and enjoyment of the Church property, injoining the defendants from disturbing them in such enjoyment, and directing Berryman to convey the title to the ground, so far as it had been vested in him, to his co-trustee.
Mi Brown for appellants; Lindsey for appellees.
It is contended that Wm. M. Suter, the co-trustee of Berryman was a necessary and indispensable party to this suit, and one of the assignments of error, questions the regularity of the proceedings upon the ground, that he was not made a party.
He is not made a defendant, nor is he one of the committee in whose names the suit was brought in behalf of the Church, but he may be, and probably is, a member of the Church, represented by the complainants, and through that medium, virtually a party to the suit. But as the title to the property so far as he held it was not involved in any of the questions made in the cause, and is not affected in any manner by the decree, we do not perceive any reason why he should be regarded as a necessary party. If therefore it certainly appeared that he was not a party, which it does not, we should hot be inclined to reverse the decree upon that ground.
Wherefore the decree of the Circuit Court is affirmed.